IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DEAN E. JAKIEL, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ]   CV-04-BE-3345-E |
| | ] |
| PARKER HANNIFIN CORPORATION, | ] |
| | ] |
| Defendant. | ] |
| | ] |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is currently before the court on a motion for summary judgment (doc. # 11), supporting brief (doc. # 13), and supporting evidentiary material (doc. # 12) filed by defendant Parker Hannifin Corporation. Plaintiff Dean E. Jakiel filed an objection to the motion for summary judgment (doc. # 15) and subsequently filed evidentiary submissions in opposition to the motion for summary judgment (doc. # 16).

Having reviewed the briefs and evidence submitted by both parties, the court concludes that the defendant's motion for summary judgment is due to be DENIED in part and GRANTED in part. The court specifically finds that the motion for summary judgment is due to be DENIED on the retaliation claim and GRANTED on the interference claim.

The facts, as presented in the light most favorable to the plaintiff, are as follows.[1] This

---

[1] Based on the thorough presentation of the facts contained in the parties' briefs, the court does not include a complete recitation of facts in this Memorandum Opinion.

case arises from plaintiff Dean Jakiel's employment with Parker Hannifin.  Jakiel alleges that his December 4, 2002 termination violated the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2612(a)(1)(C),[2] by interfering with his right to take previously approved FMLA leave to care for his injured son.  Plaintiff further alleges that the defendant retaliated against him for requesting FMLA leave by terminating his employment.

Jakiel was hired by Parker Hannifin in May 1994 as a lab assistant.  By the fall of 2002, plaintiff had been promoted to the position of process engineer in the defendant's Jacksonville, Alabama facility.  The plaintiff's immediate supervisor was Thomas Ludwig, who was then the Operations Manager of the Instrument Valve Division at the Jacksonville facility.

On October 17, 2002, the plaintiff's twenty-two-year old son, Levi, was severely injured in an amateur boxing competition and suffered a head injury.  The next day, October 18, 2002, Jakiel informed Parker Hannifin of his son's injury.  Approximately five days later on October 23, 2002, plaintiff made a verbal request for FMLA leave to care for his injured son.

On October 25, 2002, Parker Hannifin determined that Jakiel was eligible for FMLA leave to care for his son.  However, the form granting the plaintiff's request for FMLA leave specifically provided that Jakiel would "be required to furnish medical certification of such serious medical condition by 11/15/02 . . . . [and might be required to provide] second or third medical opinions or periodic certifications."[3]  The above-referenced medical certification form was enclosed with the form granting Jakiel's request for FMLA leave and mailed to the plaintiff.

---

[2]The FMLA affords an eligible employee up to twelve weeks of leave within a twelve month period for an employee to care for a child "if such child. . . has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).

[3]*See* doc. # 16, Ex. 3.

On October 28, 2002, Ludwig sent Jakiel an email directing the plaintiff to keep in contact with him regarding his son's injury and his return-to-work status.  At the time of Ludwig's email, Levi was still being treated for severe head injuries.  Levi was discharged from the hospital on October 29, 2002.  Levi's post-discharge instructions indicated that he would be unable to drive for six weeks and that he would be required to undergo occupational therapy three times a week for six weeks.

Two days later, on October 30, 2002, Jakiel received correspondence from the defendant indicating that he had been approved for FMLA leave.  The notice of approval contained a blank medical certification form that was to be returned by November 15, 2002.  After approximately fourteen days without any contact from Jakiel, Ludwig sent the plaintiff a certified letter on November 6, 2002 admonishing the plaintiff for "unacceptable behavior," related to his failure to keep him apprized of his return-to-work status.  Ludwig directed the plaintiff to contact him by 4:00 p.m. on November 12, 2002 or the defendant would consider the plaintiff to have voluntarily abandoned his employment.

On November 12, 2002, Jakiel was in Birmingham accompanying his son to a doctor's appointment.  The plaintiff did not receive Ludwig's November 6, 2002 letter until sometime later that afternoon.  Jakiel called Ludwig on November 12, 2002 at 3:55 p.m., and informed him that he had no intention of voluntarily resigning, that he would try to make it to work the next day, and that he would have worked November 12, 2002 but for his son's readmission to the hospital.

The next day, Wednesday, November 13, 2002, the plaintiff returned to work.  Sometime during that day, Jakiel met with Ludwig, regarding the concerns raised in Ludwig's November 6, 2002 letter.  At the meeting, Ludwig told the plaintiff that (1) Jakiel had an obligation to call him when he was not going to be at work; (2) the only reason Jakiel was still employed was because of

Ludwig's awareness of the severity of his son's injuries; and (3) Ludwig typically fired hourly employees who failed to keep in contact with him. Ludwig also reminded Jakiel that his medical certification was due on November 15, 2005. The plaintiff worked for the remainder of the day on November 13, 2002 and on November 14, 2002 "in order to try to salvage my job and minimize any disciplinary actions to be brought against me." [4]

On November 15, 2002, the due date for the plaintiff's medical certification form, Jakiel was given a final written warning regarding his allegedly unsatisfactory work performance. The warning detailed Jakiel's failures in not keeping Ludwig apprised of his absences, his relentless negativity, and his overall lackluster performance. The written warning also required Jakiel to submit a Performance Commitment plan detailing how he was going to improve his performance by November 26, 2002.

Ludwig also told Jakiel that his "continued employment" was contingent upon the submission of a Performance Commitment Plan, and that any "negative behavior, poor performance and/or any other unacceptable conduct" would result in immediate termination. Jakiel also failed to send in the FMLA Medical Certification by the November 15, 2002 deadline. Furthermore, the plaintiff never requested an extension of the November 15, 2002 deadline to submit the medical certification.

Two days later on November 17, 2002, Levi was again admitted to the hospital because he was vomiting large quantities of blood. Levi was discharged from the hospital on November 19, 2002. The next day, November 20, 2002, the plaintiff reported to work for a half-day. Jakiel also reported for work on November 21, 2002 where he received an email from Ludwig reminding him

---

[4] See doc. # 15, p. 10.

that his performance improvement plan was due on November 26, 2002.

On November 26, 2002, Mr. Jakiel presented his Performance Commitment Plan. Jakiel's Plan only responded to two of the eight areas of concern, indicating that the plaintiff "choose not to address at this time" the remaining six areas of Parker Hannifin's concern he had been directed to address. Jakiel's plan was "totally unacceptable" to Ludwig. Pending further review, Jakiel was immediately suspended with pay.

The next day on November 27, 2002, some twelve days after the expiration of the deadline for the submission of his medical certification form, Jakiel advised human resources manager Scott Connell that the completion of the medical certification form might be delayed because of the Thanksgiving holidays.

On December 4, 2002, Jakiel was terminated. However, the plaintiff did not receive the letter of termination until December 7, 2002. The termination letter stated that the primary reason was his failure to submit an acceptable Performance Commitment Plan after receiving a Final Written Warning.

Jakiel did not send the completed form to Parker Hannifin until three weeks later, on December 5, 2002. Just above the plaintiff's signature on the second page of the medical certification form, Jakiel wrote that the care he would provide his son was "transportation, personal business, in house therapy, psychological comfort till January 15, 2003." The certifying doctor indicated that Levi could not drive until seen by a neurosurgeon on January 15, 2003 and that he needed physical therapy.

Plaintiff filed suit in this court on November 30, 2004.

## II. STANDARD OF REVIEW AND LEGAL FINDINGS

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present. Fed. R. Civ. P. 56. Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52. In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986). Furthermore, mere verification of a party's own conclusory allegations is not sufficient to defeat a motion for summary judgment. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984).

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes as follows:

(1) The defendant's motion for summary judgment on the plaintiff's FMLA interference claim is due to be GRANTED. In an interference claim, the employee must only demonstrate that he or she "was entitled to the benefit denied." *Russell v. North Broward Hosp*., 346 F.3d 1335, 1340 (11th Cir. 2003). In the absence of Eleventh Circuit authority specifically delineating the elements of an interference claim, the court looks to guidance from another court. In *Sarali v. Automation & Modular Components, Inc*., 405 F.3d 446, 454 (6th Cir. 2005), the Sixth Circuit described the elements of an FMLA interference claim as requiring proof that (1) the plaintiff is an eligible employee under the FMLA; (2) the defendant is a covered employee under the FMLA; (3)

the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave appropriate notice to the defendant of his intention to take leave; and (5) the defendant denied the plaintiff benefits to which he or she was entitled.

In this case, the parties agree that Jakiel's son had a serious health condition occasioned by his October 17, 2002 injury and that Jakiel gave Parker Hannifin appropriate notice of his intent to take medical leave. However, they disagree about whether the plaintiff's submission of the requisite medical certification form, which occurred **after** Jakiel had already been terminated, rendered him ineligible for FMLA leave. The defendant argues that the plaintiff's submission of his medical certification form the day **after** his termination and approximately five weeks after the deadline for its completion rendered him ineligible for FMLA leave.

Although acknowledging that the regulations require an employer to provide an employee with a reasonable opportunity to cure any deficiencies in an "**incomplete**" medical certification form, the defendant argues that the regulations do not require it to provide an employee with an opportunity to cure a deficiency when the deficiency is the **total failure** to submit a medical certification form. The regulations specifically provide that an employer "shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d).

The issue raised by the defendant's argument is one of first impression in this Circuit. The Department of Labor regulations governing the implementation of the FMLA recognize that, for a variety of reasons, an employee may be unable to provide the required certification within the time-frame contemplated by the employer. *See* 29 C.F.R. § 825.311(b). Consequently, the regulations provide as follows: "[i]f an employee fails to provide a medical certification within a

7

*reasonable time* under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave.  If the employee *never* produces the certification, then the leave is not FMLA leave." 29 C.F.R. § 825.311(b).

However, the regulations are silent on the issue of whether an employer is required to accept an untimely medical certification form submitted after the employee's termination or to permit an employee to cure any deficiencies contained in an untimely medical certification submitted after the employee has already been terminated.  In short, the resolution of this issue hinges on whether the regulations require an employer to provide a reasonable opportunity to cure when the deficiency or "incompleteness" in the certification required by the employer is the total failure to submit timely medical certification in the first place.

Jakiel essentially asks this court to consider the extenuating circumstances contributing to his failure to complete the certification by the November 15, 2002 deadline (i.e., the extent of his son's injury and his son's inability to drive or otherwise care for himself).  Plaintiff also argues that Parker Hannifin's reliance on the untimeliness of his medical certification form is disingenuous given his November 27, 2002 email advising human resources manager Scott Connell that his ability to complete the medical certification form might be further delayed by the Thanksgiving holidays.

Jakiel's argument is persuasive.  However, the plaintiff has not presented the court with any supporting mandatory or persuasive authority endorsing such a liberal interpretation of the regulations.  In fact, persuasive authority from another jurisdiction undercuts the plaintiff's interpretation of the regulations.  *See e.g., Heard v. SBC Ameritech Corp.*, No. 05-CV-71712-DT, 2005 WL 1802086, at *5-7 (July 27, 2005 E.D. Mich) (considering the issue and holding that an employer has no duty under the FMLA to provide notice and an additional 15-day period to cure

8

when an employee fails to timely provide certification in the first place); *Urban v. Dolgencorp of Texas*, 393 F.3d 572, 576-577 (5th Cir. 2004) (same).

The plaintiff's argument is further undercut by the existence of the regulation that specifically addresses the failure to submit the required medical certification form within a reasonable time. *See* 29 C.F.R. § 825.311(b). Parker Hannifin advised Jakiel on October 30, 2002 and November 13, 2002 that his completed medical certification was due by November 15, 2002. Despite knowledge of this impending deadline, the plaintiff did not apprize Parker Hannifin of any of the problems that he now alleges contributed to the untimely submission of his medical certification form; did not provide the defendant with any feedback regarding the status of his medical certification form until November 27, 2002, some twelve days after the deadline; and did not actually submit the certification form until December 5, 2002. Because Jakiel failed to take reasonable steps to keep his employer advised of his son's condition and of his efforts to obtain the required medical certification, the court cannot find that Parker Hannifin's failure to consider Jakiel's untimely medical certification form was unreasonable.

Consequently, the court finds as a matter of law that the defendant is entitled to summary judgment on the plaintiff's interference claim because of an absence of a genuine issue of material fact on the issue of whether Jakiel was entitled to leave under the FMLA.

(2) However, the defendant's motion for summary judgment is due to be DENIED on the plaintiff's retaliation claim. The elements to establish a *prima facie* claim of retaliation for the exercise of rights secured under the FMLA are existence of a right protected under the FMLA; an adverse employment action; and a causal connection between the protected activity and the adverse employment action. *Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000). Jakiel essentially argues that he was terminated, not because he submitted an incomplete Performance Commitment

Plan after receiving a final written warning, but because of his October 25, 2002 verbal request for FMLA leave.

At issue is the plaintiff's ability to establish a causal connection between the protected activity and the adverse employment action. The court concludes that Jakiel has created a genuine issue of material fact on the issue of causation. Specifically, a reasonable jury could conclude, given the temporal proximity between his verbal request for FMLA leave on October 25, 2002 and his December 4, 2002 termination, that Jakiel was terminated because he requested FMLA leave. For example, a reasonable jury could conclude that both the November 6, 2002 letter and Ludwig's November 12, 2002 meeting are evidence of hostility based on his FMLA request because the record contains no evidence that, prior to the October 25, 2002 request for FMLA leave, Jakiel had ever experienced any performance deficiencies warranting Ludwig's request that he submit a Performance Improvement Plan.

The court also concludes that Jakiel has presented sufficient evidence of pretext to defeat the defendant's motion for summary judgment on the retaliation claim. A plaintiff can demonstrate pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." *Hamilton v. Montgomery County Bd. of Educ.*, 122 F. Supp. 1273, 1281 (M.D. Ala. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). The strength of the plaintiff's *prima facie* case is sufficient to establish pretext in this case because it raises questions about the legitimacy of the defendant's justification for his termination. Accordingly, the court concludes that the motion for summary judgment is due to be DENIED on the retaliation claim.

## III. CONCLUSION

Based on the foregoing analysis, the court concludes that the defendant's motion for summary judgment is due to be DENIED in part and GRANTED in part. A separate, final order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 10th day of November, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE